**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TASIHA WALKER, <br><br>　　　　Plaintiff, <br><br> v. <br><br> GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.; EQUIFAX INFORMATION SERVICES, LLC; AND TRANS UNION, LLC, <br><br>　　　　Defendants. | Civil Action No. 21-14976 (SDW)(ESK) <br><br><br><br> OPINION <br><br><br><br> July 12, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendant Trans Union, LLC's ("Trans Union" or "Defendant") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion is **GRANTED.**

## I.　BACKGROUND AND PROCEDURAL HISTORY

### A.　Factual Background

This case is about the accuracy of credit reporting under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Great Lakes Educational Services, Inc. ("Great Lakes") is a "student loan servicer that regularly and in the ordinary course of business furnishes information to various consumer reporting agencies regarding [Great Lakes'] transactions with consumers[.]" (D.E. 1–3 ("Compl.") at ¶ 5.) Defendants Equifax Information Services, LLC ("Equifax") and

1

Trans Union are "consumer reporting agenc[ies]" to whom Great Lakes furnishes consumer information. (*Id.* at ¶ 5–7.) Equifax and Trans Union are "engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports … to third parties[.]" (*Id.* at ¶¶ 6-7.)

At some point prior to July 2018, Plaintiff incurred a student loan debt that was administered by Great Lakes. (*Id.* at ¶ 8.) On or about July 2018, Plaintiff's loan account ("Account") was closed and transferred to another loan servicer. (*Id.* ¶ 9.) Since the transfer of Plaintiff's Account, Plaintiff asserts that Great Lakes had "been reporting to Equifax and [Trans Union] that Plaintiff's payment status is *currently* late by greater than 30 days throughout 2019." (*Id.* ¶ 11.) Plaintiff alleges that Great Lakes' reporting of Plaintiff's "payment status field" as "currently late" caused the "credit scoring algorithm [to calculate] the negative status as an active delinquency" and "cause[d] the credit score generated to be lower than it should be had the pay status been reported as closed[.]" (*Id.* ¶ 13.) Plaintiff contends that "Plaintiff's creditors and prospective creditors are misled as a result of a lower credit score caused by [Great Lakes'] erroneous payment status[.]" (*Id.* ¶ 14.)

In July 2019, Plaintiff sent a dispute letter to Equifax and Trans Union to "address the incorrect status which was artificially lowering Plaintiff's credit score[.]" (*Id.* ¶ 15.) In response, Trans Union forwarded Plaintiff's dispute to Great Lakes. (*Id.* ¶ 16.) Trans Union provided investigation results (the "Investigation Results") on or about August 10, 2019, which contained an excerpt of Plaintiff's credit report. (D.E. 21–2.) The Investigation Results advise that an excerpt of Plaintiff's credit report in the Investigation Results is how Plaintiff's Account "appears on your credit report following our investigation." (*Id.* at 5.) The Investigation Results demonstrate the following: (1) Plaintiff had a student loan; (2) Plaintiff's loan account had been

"closed due to transfer"; (3) in the "Balance" field, the account was shown to have "$0"; (4) in the "Date Updated" field, the account shows "07/31/2018"; (5) in the "Last Payment Made" field, the account shows the last payment was made on "06/26/2017"; (6) in the "Pay Status" field, the account shows "Account 120 Days Past Due Date"; and (7) in the "Date Closed" field, the account is shown as being closed on "07/31/2018". (*Id.*)  Plaintiff does not allege that she paid off her student loan debt prior to her Account being transferred, nor does she dispute that she was delinquent in her payments prior to the transfer. (*See generally* Compl.)

Based on the Investigation Results, Plaintiff argues that Great Lakes "failed to conduct a reasonable investigation and continued allowing the reporting of an erroneous late payment status." (*Id.* at ¶ 17.) Plaintiff sued Trans Union for violating the FCRA by inaccurately reporting her payment status as "*currently* 120 days delinquent on an account which Plaintiff is no longer obligated to make payments" and failing to adequately investigate and correct the information following her dispute. (D.E. 26 at 7, Compl. at ¶¶ 11, 13, 40–41.) Plaintiff alleges this purported inaccuracy has injured Plaintiff's "credit worthiness and increased difficulty obtaining credit." (Compl. at ¶ 18, 42.) Plaintiff does not allege that she personally has been denied credit or offered credit at an unduly high rate as a result of this allegedly inaccurate reporting. Plaintiff instead alleges she suffered unspecified "actual damages", as well as "embarrassment, humiliation, and other emotional injuries" as a result of Trans Union's reporting. (*Id.* at ¶ 18, 43–44.)

**B. Procedural History**

On July 22, 2021, Plaintiff filed a complaint in the Superior Court of New Jersey, Essex County alleging violations of the FCRA against Defendants Great Lakes, Equifax, and Trans Union. (*See generally* Compl.) Specifically, Plaintiff claims that Trans Union violated the FCRA by (1) negligently and willfully failing to maintain and/or follow reasonable procedures to assure

3

maximum possible accuracy of the information reported to third parties in violation of 15 U.S.C. § 1681e(b) and (2) failing to conduct a reasonable investigation after receiving Plaintiff's dispute highlighting errors in violation of 15 U.S.C. § 1681i. (*Id.* at ¶¶ 40–41.) In addition, Plaintiff alleges that Trans Union's action and inaction were willful, rendering it liable for actual, statutory, and punitive damages. (*Id.* at ¶ 43.) Thereafter, on August 9, 2021, Trans Union removed the action from the Superior Court of New Jersey, Essex County to this Court. (D.E. 1.) On August 16, 2021, Plaintiff voluntarily dismissed her claims against Great Lakes. (D.E. 5.) On November 17, 2021, this Court signed a Stipulation and Order of Dismissal with prejudice dismissing Plaintiff's claims against Equifax. (D.E. 15.) On December 22, 2021, Trans Union filed the instant Motion for Judgment on the Pleadings. (D.E. 21.) Plaintiff filed a brief in opposition and Trans Union filed a reply. (D.E. 26, 27.)

## II. **LEGAL STANDARD**

Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Judgment may only be granted if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). In other words, a motion for judgment on the pleadings can be granted only if the non-movant cannot prevail under any set of facts. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001). The Court analyzes both a motion to dismiss and a motion for judgment on the pleadings under the same legal standard. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

In analyzing a motion for judgment on the pleadings, the Court takes the complaint's well-pleaded facts as true and construes all allegations and inferences in the light most favorable to the

4

nonmoving party. *Id.* Beyond the complaint, the Court can consider documents attached to the complaint or those "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphases and internal quotation omitted).

Here, Trans Union attached the Investigation Results to its motion. (D.E. 21–2.) Based upon the Investigation Results, Plaintiff alleges that Great Lakes "failed to conduct a reasonable investigation and continued allowing the reporting of an erroneous late payment status." (Compl. at ¶¶ 16-17.) Plaintiff alleges that the information reported by Trans Union in the "Pay Status" trade line was inaccurate and will potentially mislead creditors now regarding her credit history and lower her credit score inaccurately. (Compl. at ¶¶ 11–14, 18.) By calling into question the Investigation Results' accuracy, Plaintiff has "invited [the Court's] consideration" of the Investigation Results. *See Spector Gadon & Rosen, P.C. v. Fishman*, 666 F.App'x 128, 131 (3d Cir. 2016). Because the Investigation Results and the information contained therein are "integral to" and "explicitly relied upon in the complaint," the Court will consider and refer to the Investigation Results in resolving the present motion.

### III. DISCUSSION

#### A. Consideration of Credit Report Excerpt Included in the Investigation Results.

"A credit report runs afoul of the [FCRA] if the information reported is factually incorrect or 'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect.'" *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 574 (E.D. Pa. 2021). "In determining whether reported information is misleading, [courts] view the information through the lens of a person in a position to make an adverse decision based on a credit report, i.e., a creditor." *Bibbs*, 521 F. Supp. 3d at 574 (citing *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 681 (E.D.

Pa. 2015) (analyzing whether credit report is accurate or misleading from the perspective of a creditor).

While both parties ask this Court to determine the accuracy of the credit report, neither party provided an actual credit report for this Court's review. Defendant instead provided the Investigation Results for the Court to determine whether Tran Union's reporting of the Account is inaccurate or misleading. (D.E. 21–2.) While the Investigation Results are not the same as a credit report, this Court will "accept [Trans Union's] representation that we can determine the accuracy of the report using the investigation results . . . ." *Bibbs*, 521 F. Supp. 3d at 574. As explained in *Bibbs*, this Court "will not consider provisions of the investigation results a creditor would not see or consider in making a credit decision," such as the definition of "Pay Status" or other definitions provided in the glossary of terms in the Investigation Results. *Id.* at 574–75.

The crux of Plaintiff's argument focuses on the "Pay Status" tradeline in the Investigation Results. (Compl. at ¶¶ 11, 13–14, D.E. 26 at 2–5.) Plaintiff relies on the definition of "Pay Status" in the Investigation Results, which is defined to mean "current status of the account; how you are currently paying." (Compl. at ¶ 13, D.E. 21–2 at 3.) Plaintiff argues that because the Account is closed, it is inaccurate or misleading to report her "Pay Status" as "currently 120 days delinquent on an account which Plaintiff is no longer obligated to make payments." (D.E. 26 at 2.) Plaintiff argues that the "credit scoring algorithm" would interpret the "Pay Status" trade line as an "active delinquency" and would mislead a creditor into believing she was delinquent on the Account. (Compl. at ¶¶ 13–14, D.E. 26 at 4–6, 7.) However, the "Pay Status" trade line makes no reference to any "current" payment obligation. (D.E. 21–2 at 3.) Conversely, Trans Union argues that the Court cannot look at "Pay Status" in isolation, as Plaintiff purports to argue. Instead, the Court

6

must view the entirety of the excerpt credit report appearing in the Investigation Results. (D.E. 21–1 at 12–18, 19.)

Because the Court analyzes the reported information from the perspective of a reasonable creditor who does not have access to the Investigation Results' glossary, the definition of the "Pay Status" field in the Investigation Results will not be considered. (*See* D.E. 21–2 at 3.) Accordingly, to determine whether a creditor would find the information materially false or misleading, the Court will consider only the excerpt of the credit report appearing in the Investigation Results and the Court will disregard any information a creditor would not see.

    **B. The Information Reported by Trans Union is Neither Inaccurate nor Misleading When Read as A Whole.**

Plaintiff asserts two claims under the FCRA. First, Plaintiff claims that Trans Union violated 15 U.S.C. § 1681e(b) because it failed to "maintain and/or follow reasonable procedures to assure maximum possible accuracy." (Compl. at ¶¶ 40.) Second, Plaintiff claims that Trans Union violated 15 U.S.C. § 1681i, which requires CRAs to "conduct a reasonable reinvestigation" if a consumer notifies the CRA that he or she disputes information contained in his or her file. 15 U.S.C. § 1681i-(a)(1)(A). (*Id.* at ¶ 41.)

To state a viable claim under the FCRA, Plaintiff must establish that the information in her credit report was inaccurate. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708, 712–13 (3d Cir. 2010). The Court does not need to reach or consider the reasonableness of a credit reporting agency's procedures under 15 U.S.C. § 1681e or the reasonableness of a credit reporting agency's reinvestigation under § 1681i unless the information contained in the report is inaccurate. *See Angino v. Trans Union, LLC*, 784 F. App'x 67, 69 (3d Cir. 2019) ("[W]e can assume that absent any indication that the information is inaccurate, [§ 1681i] does not mandate further

investigation." (internal quotation omitted)).  In short, the threshold question as to Trans Union is whether the information in Plaintiff's credit report was inaccurate or misleading.

A credit report is inaccurate if the information in the report is factually incorrect or "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (quotation and citation omitted). Under this standard, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.'" *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (quotation omitted).  Generally, the question of whether information that is "technically correct" is materially misleading "in such a way that it could have been expected to have an adverse effect is generally a matter for the jury." *Bibbs*, 521 F. Supp. 3d at 576 (internal citations omitted) (citing *Covington v. Equifax Info. Servs., Inc.*, No. 18-15640, 2019 WL 4254375, at *4 (D.N.J. Sept. 9, 2019).  But "where . . . the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law." *Samoura v. Trans Union LLC*, Civ. No. 20-5178, 2021 WL 915723, *4 (E.D. Pa. Mar. 10, 2021).

In assessing the information in a consumer's credit report, a court must view the information "through the lens of a person in a position to make an adverse decision based on a credit report, i.e., a creditor." *Bibbs*, 521 F. Supp. 3d at 574 (citing *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d at 681 (analyzing whether credit report is accurate or misleading from the perspective of a creditor); *Gibbs v. Trans Union, LLC*, Civ No. 21-00667, 2021 WL 4439546, at *2 (E.D. Pa. Sept. 28, 2021).  "In other words, it does not matter whether the report is inaccurate or misleading in the *consumer's* opinion." *Holland v. Trans Union, LLC*, Civ. No. 21-152, 2021

8

WL 5804375, *4 (E.D. Pa. Dec. 7, 2021) (citing *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001)).  In reviewing the accuracy of a credit report, a court reviews the report in its entirety rather than focusing on a single, isolated field. *See, e.g.*, *Schweitzer*, 441 F. App'x at 900-01; *Gibbs*, 2021 WL 4439546, at *2; *see also Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) ("[T]he fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading.").

District Courts in this Circuit have consistently found as a matter of law that it is not patently inaccurate or materially misleading for a CRA to report the historical pay status for an account that was closed and transferred with a $0 balance because such report, when read as a whole, would not reasonably mislead a creditor to believe that the account is currently past due. *See, e.g.*, *Bibbs*, 521 F.Supp. 3d at 580 (finding that a report was accurate as a matter of law, despite reporting "120 Days Past Due" because the "Date Updated field, the Date Closed field, the Balance field, the remark 'ACCT CLOSED DUE TO TRANSFER,' and the lack of Ratings information beyond March 2018" all indicated that the report contained accurate, historical information); *Gibbs*, 2021 WL 4439546, at *2 (finding that, read as a whole, Plaintiff's "credit report is susceptible to only one reading: she paid her accounts in full in 2013 but was delinquent on those accounts before she paid them" where "the report lists a $0 balance, notes that it is '"closed,"' and shows the same date for the last payment, the last update, and the date of closure"); *Ostrander*, 2021 WL 3271168, at *8 (finding that, when the plaintiff's credit report indicated a zero-dollar balance, was "60 [d]ays" past due, and was last updated, paid, and closed on December 1, 2013, the "only logical conclusion" from the report was "that the plaintiff was *previously* 60 days past due (*i.e.*, as of December 1, 2013, the date the account was closed)" (emphasis in

original); *Holland v. Trans Union LLC*, 2021 WL 5804375, at *5 (E.D. Pa. Dec. 7, 2021) (finding that, read as a whole, the CRAs did not report inaccurate or misleading information where the only reasonable reading of the report was that Plaintiff "was delinquent on the USAA personal loan in September 2017, he made his payment in September 2017, bringing the balance of the account to $0, thus closing the account in September 2017").

Here, the reported information in the excerpt of the credit report is not "inaccurate" or "misleading" such that it would have an adverse effect on Plaintiff.[1]  Although Plaintiff alleges that Trans Union is reporting that Plaintiff is "*currently* 120 days delinquent on an account which Plaintiff is no longer obligated to make payments[,]" when read as a whole, it is clear that the information Trans Union reported is historical and regards Plaintiff's Account as of July 2018 when it was closed/transferred to another servicer.  (D.E. 26 at 2, D.E. 21–2.)  As such, that information makes no reference to any *current* payment obligation.  Plaintiff asks this Court to limit its review to the "Pay Status" tradeline, which reads ">Account 120 Days Past Due<", ignore all other tradelines, and determine a reasonable creditor would mistakenly believe she currently owes past due payments on the Account.  (Compl. at ¶¶ 11, 13, D.E. 26 at 2–5.)  This we cannot do.  This Court declines to take such a narrow approach, which would require the Court to "parse and squint, and consider only the pay status line as opposed to the entirety of the furnished information."  *Egues v. Nelnet Servicing, LLC*, 2021 WL 3486904, at *3 (internal citations removed) (citing *Lacey v. TransUnion, LLC*, Civ No. 21-519, 2021 WL 2917602, *4 (M.D. Fla. July 12, 2021)).  As the courts in *Samoura*, *Schweitzer*, and *Gibbs* explained, we must view the account information given to the creditor in its entirety, and doing so, the reported information is accurate as a matter of law.

---

[1] Because Plaintiff has failed to establish that the credit report is inaccurate or misleading, this Court need not reach or consider the issue of actual damages or a willful violation of the FCRA. Thus, this Court's inquiry ends.

Moreover, it is well-settled that the Court will not "read in nonexisting present tense language" into the "Pay Status" trade line. *Egues v. Nelnet Servicing, LLC*, 2021 WL 3486904, at *3 (explaining that adopting Plaintiff's position that the servicer furnished inaccurate information by "reporting that Plaintiff [was] *currently* 120 days delinquent on an account" would require this Court "to read in nonexisting present tense language into the information Nelnet furnished regarding an account it closed in 2015[,]" as the information furnished "makes no reference to any current payment obligation"); *Samoura*, 2021 WL 915723, at *7 (explaining that the Court will not "read in non-existing present tense language into the 'Pay Status' field and ignore the Date Updated field, the Date Closed field, the Balance field, the Remarks field, and the Ratings field to conclude Trans Union reported inaccurate or misleading information").

This Court concludes that the information reported by Trans Union was accurate and not misleading. From the perspective of a reasonable creditor, viewing Plaintiff's credit report in its entirety and considering all of the various trade lines, there is one reasonable reading: Plaintiff was 120 days past due on her required payments at the time the Account was transferred, the Account was "CLOSED DUE TO TRANSFER" in July 2018, the Account was last updated in July 2018, and the Account had a balance of $0. (D.E. 21–2 at 5.) The Date Closed, the Balance, and the Remarks, all unequivocally confirm the account is closed with a zero-dollar balance. (*Id.*) Indeed, a creditor, reading the report in its entirety, would not conclude that when the Account was closed with a zero balance, there were still payment obligations as Plaintiff claims. (D.E. 26 at 4–5.) Plaintiff's position that the "credit scoring algorithm" would interpret the "Pay Status" trade line as an "active delinquency" is unavailing. (Compl. at ¶¶ 13–14, D.E. 26 at 4–5.) It is well-established that "[i]n determining whether reported information is misleading, the Court must view the information in a credit report from the perspective of a reasonable creditor[,]" not from the

perspective of a "credit scoring algorithm". (Compl. at ¶¶ 13–14, D.E. 26 at 4–5); *Washington v. FedLoan Servicing*, 2021 WL 4077952, at *9 (E.D. Pa. Sept. 8, 2021). In short, a reasonable creditor would not find the reported information (a closed account with a $0 balance) misleading in such a way and to such an extent that it can be expected to adversely affect its credit decisions. This Court joins the numerous courts which have held that the "'mere reporting of historical information on a closed account with a $0 balance neither causes confusion nor creates an inaccuracy when it is clear there exists no ongoing obligation for payment.'" *Egues v. Nelnet Servicing, LLC*, 2021 WL 3486904, at *3 (citing *Robinson v. WebBank*, Civ No. 19-2458, 2021 WL 8225363, at *3 (N.D. Ga. Nov. 17, 2020). Accordingly, Trans Union's motion will be granted.

### C. Plaintiff's Request for Leave to Amend.

In the alternative to her response to Trans Union's motion for judgment on the pleadings, Plaintiff now seeks leave to amend her complaint to correct its deficiencies. A "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). On the other hand, "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Plaintiff did not do so here. Notwithstanding, the Court finds that any amendment to the Complaint would be futile because Plaintiff has failed to demonstrate that the credit report was inaccurate or misleading as required by the FCRA.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Judgment on the Pleadings is **GRANTED with prejudice**.

An appropriate order follows.

                                                  /s/ Susan D. Wigenton
                                                  **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Edward S. Kiel, U.S.M.J.